IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CARLOS NINO DE RIVERA LAJOUS; SECOND AMENDMENT FOUNDATION, INC.; and NEBRASKA FIREARMS OWNERS ASSOCIATION, | ) ) ) ) ) ) | 4:13CV3070 |
| Plaintiffs, | ) ) | MEMORANDUM AND ORDER |
| v. | ) ) | |
| JON BRUNING, in his official capacity as Attorney General of the State of Nebraska; and DAVID SANKEY, in his official capacity as Superintendent of the Nebraska State Patrol, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This is an action for declaratory and injunctive relief. It is claimed that a citizenship requirement in Nebraska's Concealed Handgun Permit Act, Neb. Rev. Stat. §§ 69-2427 to 69-2449, (1) violates the Second Amendment to the United States Constitution, (2) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and (3) is preempted by federal immigration law. There are three plaintiffs: (1) Carlos Nino de Rivera Lajous, who is alleged to be a Mexican citizen residing in Lincoln, Nebraska, on a permanent resident visa; (2) Second Amendment Foundation, Inc. ("SAF"), which is alleged to be a Washington non-profit corporation; and (3) Nebraska Firearms Owners Association ("NOFA"), which is alleged to be a Nebraska corporation. There are two defendants: (1) the Nebraska Attorney General, John Bruning; and (2) the Superintendent of Law Enforcement and Public Safety (the Nebraska State Patrol), David Sankey.

The defendants have filed a motion to dismiss the plaintiffs' complaint for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).[1] The motion to dismiss will be granted in part and denied in part, as follows: (1) On the first count (Second Amendment claim), the motion will be granted because the Constitution does not confer a right to carry a concealed weapon. (2) On the second count (equal protection  claim), the motion to dismiss will be granted with respect to a facial challenge to the Act's citizenship requirement because at least some non-citizens (*e.g.*, illegal aliens) are lawfully prohibited from carrying concealed firearms, but the motion will be denied insofar as the plaintiffs are bringing an as-applied challenge. (3) On the third count (federal preemption claim), the motion will be denied because the legal basis for dismissal has not been briefed by the defendants and the issue is deemed waived.  *See* NECivR 7.1(a)(1)(A).  (4) As to all counts, the motion to dismiss the Nebraska Attorney General as a party defendant will be granted.

### *Nebraska Statutes*

Subject to a work-related exception,[2] "any person who carries a weapon or weapons concealed on or about his or her person, such as a handgun, a knife, brass or iron knuckles, or any other deadly weapon, commits the offense of carrying a

---

[1] To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[2] "It is an affirmative defense that the defendant was engaged in any lawful business, calling, or employment at the time he or she was carrying any weapon or weapons and the circumstances in which such person was placed at the time were such as to justify a prudent person in carrying the weapon or weapons for the defense of his or her person, property, or family." Neb. Rev. Stat. § 28-1202(1)(b).

concealed weapon" under Nebraska law. Neb. Rev. Stat. § 28-1202(1)(a).[3] However, "[t]his section does not apply to a person who is the holder of a valid permit issued under the Concealed Handgun Permit Act if the concealed weapon the defendant is carrying is a handgun." Neb. Rev. Stat. § 28-1202(2).

"Application for a permit to carry a concealed handgun shall be made in person at any Nebraska State Patrol Troop Headquarters or office provided by the patrol for purposes of accepting such an application. . . . The application shall be made on a form prescribed by the Superintendent of Law Enforcement and Public Safety. . . and shall include space for the applicant to affirm that he or she meets each and every one of the requirements set forth in section 69-2433. . . ." Neb. Rev. Stat. § 69-2430(1).

An applicant shall:

    (1) Be at least twenty-one years of age;

    (2) Not be prohibited from purchasing or possessing a handgun by 18 U.S.C. 922, as such section existed on January 1, 2005;

    (3) Possess the same powers of eyesight as required under section 60-4,118 for a Class O operator's license. If an applicant does not possess a current Nebraska motor vehicle operator's license, the applicant may present a current optometrist's or ophthalmologist's statement certifying the vision reading obtained when testing the applicant. If such certified vision reading meets the vision requirements prescribed by section 60-4,118 for a Class O operator's license, the vision requirements of this subdivision shall have been met;

    (4) Not have been convicted of a felony under the laws of this state or under the laws of any other jurisdiction;

---

[3] A first offense under this section is a Class I misdemeanor, while a second or subsequent conviction is a Class IV felony. Neb. Rev. Stat. § 28-1202(3), (4).

(5) Not have been convicted of a misdemeanor crime of violence under the laws of this state or under the laws of any other jurisdiction within the ten years immediately preceding the date of application;

(6) Not have been found in the previous ten years to be a mentally ill and dangerous person under the Nebraska Mental Health Commitment Act or a similar law of another jurisdiction or not be currently adjudged mentally incompetent;

(7)(a) Have been a resident of this state for at least one hundred eighty days. For purposes of this section, resident does not include an applicant who maintains a residence in another state and claims that residence for voting or tax purposes except as provided in subdivision (b) or (c) of this subdivision;

(b) If an applicant is a member of the United States Armed Forces, such applicant shall be considered a resident of this state for purposes of this section after he or she has been stationed at a military installation in this state pursuant to permanent duty station orders even though he or she maintains a residence in another state and claims that residence for voting or tax purposes; or

(c) If an applicant is a new Nebraska resident and possesses a valid permit to carry a concealed handgun issued by his or her previous state of residence that is recognized by this state pursuant to section 69-2448, such applicant shall be considered a resident of this state for purposes of this section;

(8) Not have had a conviction of any law of this state relating to firearms, unlawful use of a weapon, or controlled substances or of any similar laws of another jurisdiction within the ten years preceding the date of application. This subdivision does not apply to any conviction under Chapter 37 or under any similar law of another jurisdiction, except for a conviction under section 37-509, 37-513, or 37-522 or under any similar law of another jurisdiction;

(9) Not be on parole, probation, house arrest, or work release;

-4-

(10) *Be a citizen of the United States*; and

(11) Provide proof of training.

Neb. Rev. Stat.§ 69-2433 (emphasis supplied).

### *Plaintiffs' Allegations*

In support of their claims that subsection (10) of section 69-2433 violates the Second and Fourteenth Amendments, and is preempted by federal immigration law, the plaintiffs allege:

8. Plaintiff LAJOUS is 68 years old, and a citizen of Mexico residing in Lincoln, Nebraska, and who has done so since 1990. LAJOUS received his permanent resident visa (a/k/a "green card") in 1991, and earned three associate degrees in the applied sciences from Central Community College in Hastings, Nebraska in the early 1990's. LAJOUS has worked as a machinist for an aviation company in Lincoln for fourteen years. He also has family in the area. In sum, he has many solid connections to the State of Nebraska and the Lincoln area.

9. LAJOUS is allowed to carry a firearm openly in Nebraska, except for locations where doing such is illegal, but does not always wish to do so, and he is prohibited by NRS § 69-2433(10) from obtaining a concealed carry permit, and thus carrying a handgun in a concealed manner for self-defense.

10. LAJOUS would carry a loaded and functional concealed handgun in public for self-defense, but he refrains from doing so because he fears arrest, prosecution, fine, and imprisonment as he understands it is unlawful for a non-citizen to carry a concealed handgun in Nebraska.

11. On or about February 24, 2013, LAJOUS went to the Lincoln office of the Criminal Identification Division ("CID") of the Nebraska State Patrol to complete and submit a concealed carry permit application. Julie Rogers, a Records Technician at the State Patrol's CID, and an employee of same, learned LAJOUS was not an American citizen and

would not allow him to even fill out the application, much less submit it. Therefore, LAJOUS's attempt to file a concealed carry permit application was denied.

12. SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's membership includes lawfully admitted aliens residing in Nebraska. SAF has over 650,000 members and supporters nationwide. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms. SAF brings this action on behalf of itself and its members.

13. Members of SAF who are legal residents yet non-citizens would carry loaded and functional concealed handguns in public for self-defense, but refrain from doing so because they understand it is impossible for a non-citizen to obtain a concealed carry permit, and thus it is unlawful for a non-citizen to carry a concealed handgun in Nebraska and fear arrest, prosecution, fine, and imprisonment.

14. NFOA is an organization incorporated under the laws of Nebraska with its principal place of business in Syracuse, Nebraska. The purposes of NFOA include education, political lobbying and legal action focusing on the Constitutional right privately to own and possess firearms in Nebraska. NFOA brings this action on behalf of itself and its supporters, which include lawful resident aliens residing in Omaha, Nebraska.

15. Members of NFOA who are legal residents yet non-citizens would carry loaded and functional concealed handguns in public for self-defense, but refrain from doing so because they understand it is impossible for a non-citizen to obtain a concealed carry permit, and thus it is unlawful for a non-citizen to carry a concealed handgun in Nebraska and fear arrest, prosecution, fine, and imprisonment.

16. LAJOUS is a member of both SAF and NFOA.

17. Defendant BRUNING is the Attorney General of the State of Nebraska, and, in his official capacity as such, is responsible for

executing and administering the state of Nebraska's laws, customs, practices, and policies, including NRS § 69-2433(10). In that capacity, BRUNING is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in his official capacity.

18. Defendant SANKEY is the Superintendent of Law Enforcement and Public Safety with the Nebraska State Patrol. In SANKEY's official capacity, he is responsible for enforcing certain of Nebraska's laws, customs, practices, and policies, specifically including NRS § 69-2433(10). In that capacity, SANKEY is presently enforcing the laws, customs, practices and policies complained of in this action. Specifically, SANKEY is the authority charged with processing and issuing concealed carry permit applications in Nebraska. He is sued in his official capacity.

. . .

26. The citizenship requirements contained in NRS § 69-2433(10) and all other Nebraska statutory language, which restrict lawfully admitted aliens the rights and privileges of carrying concealed firearms based on citizenship, on their face and as applied, are unconstitutional denials of equal protection of the laws and are in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

. . .

28. The citizenship requirements contained in NRS § 69-2433(10), and all other Nebraska statutory language, which restrict lawfully admitted aliens the rights and privileges of carrying concealed firearms based on citizenship, on their face and as applied, violate the Plaintiffs' individual right to possess a handgun as secured by the Second Amendment to the United States Constitution.

. . .

30. The federal government has, through its enumerated and implied constitutional powers, the exclusive authority over United States immigration policy.

-7-

31. NRS § 69-2433(10) is an effort by the Defendants to regulate immigration by denying non-citizens their Second and Fourteenth Amendment rights. As such, NRS § 69-2433(10) is preempted by federal immigration law, is unconstitutional, and is invalid.

Complaint (filing 1), at 3-9.

### *Second Amendment Claim (Count I)*

The United States Court of Appeals for the Tenth Circuit held in February of this year, in a case challenging a residency requirement in a Colorado permit statute, that the Second Amendment does not confer a right to carry concealed weapons. *See Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013). The Court began its analysis by noting that the United States Supreme Court stated in *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897) (obiter dictum), that "the right of the people to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons," and, more recently, in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), that "[l]ike most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *See Petersen*, 707 F.3d at 1210. "As an example of the limited nature of the Second Amendment right to keep and carry arms, the [Supreme] Court observed that 'the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues.'" *Id.* (quoting *Heller*, 554 U.S. at 626). "And the Court stressed that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions.'" *Id.* (quoting *Heller*, 554 U.S. at 626). The Tenth Circuit continued:

There can be little doubt that bans on the concealed carrying of firearms are longstanding. In *Heller*, the Supreme Court cited several early cases in support of the statement that most nineteenth century courts approved of such prohibitions. *See Nunn v. State*, 1 Ga. 243, 251

(1846) ("[S]o far as the act of 1837 seeks to suppress the practice of carrying certain weapons secretly, that it is valid, inasmuch as it does not deprive the citizen of his natural right of self-defence, or of his constitutional right to keep and bear arms." (emphasis omitted)); *State v. Chandler*, 5 La. Ann. 489, 490 (1850) ("This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."); *see also Robertson*, 165 U.S. at 281–82, 17 S.Ct. 326 ("[T]he right of the people to keep and bear arms ... is not infringed by laws prohibiting the carrying of concealed weapons."). Dissenting in *McDonald* [*v. City of Chicago*, 130 S.Ct. 3020 (2010)], Justice Breyer further discussed the history of concealed carry regulations. *See* 130 S.Ct. at 3132 (Breyer, J., dissenting) (citing to an 1847 Virginia statute that barred the carrying of pistols "hidden from common observation"); *id.* at 3134 (noting that "[f]ifteen States banned the concealed carry of pistols and other deadly weapons" during the post-Civil War era). We note, however, that this view was not unanimous. *See Bliss v. Commonwealth*, 12 Ky. 90, 91-92 (1822) (striking a ban on concealed carry as inconsistent with a state constitutional provision). Nevertheless, "[m]ost states enacted laws banning the carrying of concealed weapons" in the nineteenth century. *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 95 (2d Cir.2012) [*cert. denied*, 133 S.Ct. 1806 (2013)]; *see also id.* at 95 n. 21 (collecting statutes).

Scholars have also noted the long history of concealed carry restrictions in this country. *See* David T. Hardy, *The Rise & Demise of the "Collective Right" Interpretation of the Second Amendment*, 59 Clev. St. L.Rev. 315, 333 (2011) ("Beginning in the 1820s, State courts faced issues arising from the interaction of early weapons laws, chiefly bans on concealed carry. Most rulings upheld the bans...." (footnote omitted)); Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self–Defense: An Analytical Framework and a Research Agenda*, 56 U.C.L.A. L.Rev. 1443, 1516 (2009) ("This tradition [of prohibiting the concealed carry of firearms] does indeed go back to 1813 and the following decades, at least in some Southern and border states, as well as in Indiana, and by the end of the 19th century the constitutionality of such bans had become pretty broadly accepted." (footnote omitted)); Adam Winkler, *Heller's Catch-22, 56 U.C.L.A.*

L.Rev. 1551, 1569 (2009) ("The Court was correct to recognize the long historical pedigree of bans on concealed carry, which date back much further than the other exceptions recognized by the Court."). Given this lengthy history of regulation, restrictions on concealed carry qualify as "longstanding" and thus "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 626 & n. 26, 128 S.Ct. 2783; *see also National Rifle Association of America, Inc., v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196 (5th Cir. 2012) ("*Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue.... *Heller* considered firearm possession bans on felons and the mentally ill to be longstanding, yet the current versions of these bans are of mid-20th century vintage." (citations omitted) [*petition for cert. filed*, No. 13-137 (U.S. July 29, 2013)]).

We agree with the Fifth Circuit that in applying the two-step approach to Second Amendment claims,[4] we consider at the first step "whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." *Nat'l Rifle Ass'n*, 700 F.3d at 194 (citations omitted). As the foregoing demonstrates, concealed carry bans have a lengthy history. *See Kachalsky*, 701 F.3d at 95 & n. 21 (noting that most states banned concealed carry in the nineteenth century). Given the dicta in *Robertson*, 165 U.S. at 281-82, 17 S.Ct. 326, and the Supreme Court's admonition in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions," 554 U.S. at 626, 128 S.Ct. 2783, we conclude that Peterson's Second

---

[4] The Tenth Circuit explained its "two-step approach to Second Amendment claims" as follows:

In *United States v. Reese*, 627 F.3d 792 (10th Cir. 2010), this court adopted a "two-pronged approach" to Second Amendment claims. First, we "ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Id.* at 800. If the law does not impose a burden, it is constitutional. If it does, then the court "must evaluate the law under some form of means-end scrutiny." *Id.* at 801.

*Peterson*, 707 F.3d at 1208.

Amendment claim fails at step one of our two-step analysis: the Second Amendment does not confer a right to carry concealed weapons.

*Id*. at 1210-11.

I agree with the Tenth Circuit's analysis in *Peterson* and adopt its holding that the Second Amendment does not confer a right to carry concealed weapons. Count I of the plaintiffs' complaint thus fails to state a claim upon which relief can be granted,[5] and it will be dismissed with prejudice.

### *Equal Protection Claim (Count II)*

The plaintiffs' Fourteenth Amendment equal protection claim involves both a facial challenge and an as-applied challenge to the citizenship requirement of Neb. Rev. Stat. § 69-2433(10). They allege the statute is unconstitutional because it "restrict[s] lawfully admitted aliens the rights and privileges of carrying concealed firearms based on citizenship" (filing 1 at 8, ¶ 28), and contend a "strict scrutiny" review is applicable because (1) this case involves "the core fundamental Second Amendment right of self-defense" (filing 18 at 16) and (2) "permanent resident aliens are a 'suspect class' for Equal Protection purposes" (filing 18 at 2).

The defendants contend a "rational relationship" test should be applied because (1) "regulation of concealed handguns does not violate the Second Amendment" (filing 14 at 9) and (2) "[s]tate laws discriminating on the basis of alienage are reasonable, and not suspect, when they deal with subject matter 'firmly within the state's constitutional prerogatives,'" such as the state's police power (filing 14 at 9 (quoting *Sugarman v. Dougall*, 413 U.S. 634, 648 (1973)). According to the defendants, the citizenship requirement "is a rational means of protecting the public from those individuals carrying concealed handguns whose criminal backgrounds

---

[5] It is not necessary to consider the defendants' alternative argument that the Second Amendment's protections extend only to citizens.

cannot be determined by the licensing agency, as is therefore facially valid" (filing 14 at 14).  The defendants state that "[i]nformation on the applicant's mental health and criminal history is furnished through the Nebraska State Patrol and the Federal Bureau of Investigation's National Crime Information Center ('NCIC')," but they claim "the NCIC does not reveal criminal histories from outside of the United States" (filing 14 at 13-14).  The defendants also argue that "since all non-citizens are excluded because licensing agencies are unable to compile a complete background knowledge of non-citizens, the law is as narrowly-tailored as possible in furtherance of the compelling interest of public safety" and passes even strict scrutiny(filing 14 at 18).

Rather than specifically address each of the parties' arguments, I will discuss, first of all, whether the plaintiffs can prevail on a facial challenge regardless of which test is applied, and, secondly, whether each of the plaintiffs has standing to bring an as-applied equal protection claim.  As indicated previously, I conclude that the facial challenge fails as a matter of law, but that an as-applied challenge can be maintained.

> "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *see also Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449–50, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (reaffirming the *Salerno* test outside the context of certain First Amendment challenges). This is because facial challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Wash. State Grange*, 552 U.S. at 450, 128 S.Ct. 1184 (internal quotation marks omitted).

*TCF Nat'l Bank v. Bernanke*, 643 F.3d 1158, 1163 (8th Cir. 2011); *see also United States v. Stephens*, 594 F.3d 1033, 1037 (8th Cir. 2010) (discussing facial and as-applied challenges).

Because Nebraska's Concealed Handgun Permit Act excludes all non-citizens from applying for a permit, a facial challenge cannot be confined to deciding whether the Act unconstitutionally discriminates against "lawfully admitted aliens," as alleged in the complaint.  The plaintiffs do not claim that the Act violates the constitutional rights of illegal aliens; indeed, they would be hard-pressed to make such an argument when it is a federal crime for an illegal alien to possess a firearm.  *See* 18 U.S.C. § 922(g)(5)(A) ("It shall be unlawful for any person ... who, being an alien ... is illegally or unlawfully in the United States ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."). The constitutionality of this prohibition has been upheld repeatedly.  *See United States v. Carpio-Leon*, 701 F.3d 974, 982-83 (4th Cir. 2012) (Second Amendment right to bear arms does not extend to illegal aliens; nor does section 922(g)(5) violate right to equal protection under Due Process Clause of Fifth Amendment), *petition for cert. filed*, No. 12-9291 (U.S. Mar 14, 2013); *see also United States v. Toner*, 728 F.2d 115, 128-29 (2d Cir. 1984) (predecessor statute to section 922(g)(5) did not violate defendant's right to equal protection); *United States v. Portillo-Munoz, 643 F.3d 437, 439-42 (5th Cir. 2011)* (Second Amendment protections do not extend to illegal aliens), *cert. denied*, 132 S.Ct. 1969 (2012); *United States v. Flores*, 663 F.3d 1022, 1023 (8th Cir. 2011) ("Agreeing with the Fifth Circuit that the protections of the Second Amendment do not extend to aliens illegally present in this country, ... we affirm [the defendant's conviction].") (citing *Portillo-Munoz*), *cert. denied*, 133 S.Ct. 28 (2012); *United States v. Yanez-Vasquez*, No. 09-40056-01-SAC, 2010 WL 411112, *3 (D.Kan. Jan. 28, 2010) ("[T]he few cases which have examined the constitutionality of 922(g)(5) post-*Heller* have held that illegal aliens are not protected by the Second Amendment.") (citing district court decisions).

In fact, a facial challenge to a South Dakota law requiring an applicant for a concealed-carry permit to be a United States citizen was rejected by a federal district court just two years ago, with the court stating:

-13-

Generally speaking, "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the [statute] would be valid[.]'" *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (first alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). *See also Wersal v. Sexton*, 613 F.3d 821, 831 (8th Cir.2010) ("Indeed, a plaintiff can [generally] only succeed in a facial challenge by establish[ing] that no set of circumstances exists under which the [law] would be valid." (alterations in original) (internal quotations and citations omitted)). During the evidentiary hearing, Smith acknowledged that SDCL 23-7-7.1(8) could be constitutionally applied if the applicant were an illegal alien who otherwise satisfied the statute's remaining requirements. *See, e.g., League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523 (6th Cir. 2007); *LeClerc v. Webb*, 419 F.3d 405 (5th Cir. 2005). Thus, the facial attack against SDCL 23-7-7.1(8) fails because Smith has failed to demonstrate "that the law is unconstitutional in all of its applications." *Wash. State Grange*, 552 U.S. at 449, 128 S.Ct. 1184 (citation omitted). Therefore, the only remaining issue before the court is whether SDCL 23-7-7.1(8) is constitutional as applied to Smith.

*Smith v. South Dakota*, 781 F.Supp.2d 879, 882-83 (D.S.D. 2011); *see also Fletcher v. Haas*, 851 F.Supp.2d 287, 291 n. 7 (D.Mass. 2012) (Massachusetts citizenship requirement for firearm license not unconstitutional on its face).

Applying the same rationale as the South Dakota court, I hold that Neb. Rev. Stat. § 69-2433(10) on its face does not contravene the Equal Protection Clause of the Fourteenth Amendment because the citizenship requirement does not violate the constitutional rights of illegal aliens. Consequently, the plaintiffs are limited to claiming that the statute is unconstitutional as applied to them. If they prevail on this claim, the available relief will likewise be limited:

"An as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court." *Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 790 (8th Cir. 2004). "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." *Id.*; *see*

-14-

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 130 S.Ct. 876, 893, 175 L.Ed.2d 753 (2010) (holding that the distinction between a facial challenge and an as-applied challenge "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint").

*Minnesota Majority v. Mansky*, 708 F.3d 1051, 1059 (8th Cir. 2013), *petition for cert. filed*, No. 13-185 (U.S. Aug 5, 2013).

For purposes of deciding the motion to dismiss, the factual allegations of the plaintiffs' complaint are accepted as true. *See Fullington v. Pfizer, Inc.*, 720 F.3d 739, 746 (8th Cir. 2013). Mr. Lajous is a permanent resident alien who has lived in Lincoln, Nebraska, since 1990 (filing 1 at 3, ¶ 8), and he is a member of both SAF and NOFA (filing 1 at 5, ¶ 16). He tried to apply for a concealed-carry permit in February 2013 but was refused an application because he is not a United States citizen. SAF is a national organization with 650,000 members and supporters that promotes "education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms" (filing 1 at 4, ¶ 12), while NOFA has been organized locally for the purposes of "education, political lobbying and legal action focusing on the Constitutional right privately to own and possess firearms in Nebraska" (filing 1 at 5, ¶ 14). SAF's membership includes other "lawfully admitted aliens residing in Nebraska" (filing 1 at 4, ¶ 12), and NOFA has "supporters" who are "lawful resident aliens residing in Omaha, Nebraska" (filing 1 at 5, ¶ 14).

Although not made an issue by the defendants, "standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *Turkish Coalition of America, Inc. v. Bruininks*, 678 F.3d 617, 621 (8th Cir. 2012) (quoting *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007)). "To show standing under Article III of the U.S. Constitution, a plaintiff must demonstrate (1) injury in fact,[6] (2) a causal connection between that injury and the challenged conduct,

---

[6] "The injury in fact element requires a plaintiff to allege 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

and (3) the likelihood that a favorable decision by the court will redress the alleged injury." *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013) (quoting *Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Mr. Lajous has standing to challenge the constitutionality of Neb. Rev. Stat.§ 69-2433(10) because he is not a citizen of the United States, and he has been refused an application for a concealed-carry permit on that basis. The allegations of the complaint do not show that he is otherwise ineligible for a permit, nor is it necessary for him to allege and prove eligibility.[7]

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Northeastern Fla. Chapter of the Assoc. General Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993) (to establish standing to mount equal protection challenge

---

imminent, not conjectural or hypothetical.'" *Charvat v. Mutual First Federal Credit Union*, __ F.3d __, 2013 WL 3958300, *2 (8th Cir. 2013) (quoting *Lujan*, 504 U.S. at 560).

[7] Thus, for example, while Mr. Lajous alleges that he is Nebraska resident, which is a separate requirement under the Concealed Handgun Permit Act, *see* Neb. Rev. Stat.§ 69-2433(7), such requirement is not directly at issue in this case. The length of his residency and other factors may be relevant to his individual as-applied claim, however. *See, e.g.*, *Smith*, 781 F.Supp.2d at 882 (resident alien who had lived in the United States for over 30 years was denied equal protection by South Dakota statute that prohibited non-citizens from obtaining concealed-carry permits; criminal background check would have returned same information for plaintiff during this period regardless of whether he was a U.S. citizen or permanent resident).

-16-

to minority set-aside program for government contracts, party need only demonstrate that it is able and ready to bid on contracts and that discriminatory policy prevents it from doing so on equal basis); *see also Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 863 (8th Cir. 2006) (advocates for gay and lesbian rights suffered "injury in fact" when amendment to Nebraska Constitution limited state-recognized institution of marriage to heterosexual couples). A causal connection between Mr. Lajous's injury and challenged statute is sufficiently alleged, and the injury is capable of being redressed by the court directing that he be allowed to apply for a permit even though he his not a citizen of the United States. *See Northeastern Fla.*, 508 U.S. at 666 n. 5 ("It follows from our definition of 'injury in fact' that petitioner has sufficiently alleged both that the city's ordinance is the 'cause' of its injury and that a judicial decree directing the city to discontinue its program would 'redress' the injury.").

As organizations, of course, SAF and NOFA would not qualify as applicants for a permit under the challenged statute because only "an individual may obtain a permit to carry a concealed handgun in accordance with the Concealed Handgun Permit Act." Neb. Rev. Stat. § 69-2428. However, "[a]n association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Iowa League of Cities*, 711 F.3d at 869 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000)). "The [association] need not establish that all of its members would have standing to sue individually so long as it can show that 'any one of them' would have standing." *Id.*

From the allegations of the complaint, it appears that SAF and NOFA have associational standing to bring an as-applied equal protection claim. First of all, as discussed above, Mr. Lajous has standing to sue in his own right to challenge the constitutionality of Neb. Rev. Stat.§ 69-2433(10), and he is alleged to be a member

of both organizations.[8] Secondly, elimination of the prohibition against non-citizens applying for a permit to carry concealed handguns is germane to the purposes of SAF and NOFA, both of which are interested in protecting the constitutional rights of gun owners. Third, and finally, it is not essential that there be an individual plaintiff because the equal protection claim does not depend upon the particular qualifications of a permit applicant, and the plaintiffs do not seek to require the issuance of a permit to any individual; their claim for declaratory and injunctive relief involves a "pure question of law." *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 287-88 (1986) (finding union could litigate claims on behalf of aggrieved members because no individualized proof was required); *see also United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996) ("individual participation" is not normally necessary when an association seeks prospective or injunctive relief for its members).

"Where a law neither implicates a fundamental right nor involves a suspect or quasi-suspect classification, the law must only be rationally related to a legitimate government interest." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012), *cert. denied*, 133 S.Ct. 2354 (2013). "Such a law is accorded a strong presumption of validity and is upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (internal quotations and citations omitted). "Strict scrutiny review is applied when a challenged classification affects a fundamental constitutional right or a suspect class." *Stiles v. Blunt*, 912 F.2d 260, 263 (8th Cir. 1990). To survive strict scrutiny, the law must be "narrowly tailored to serve a compelling state interest." *Gallagher*, 699 F.3d at 1017.

The plaintiffs contend strict scrutiny review applies because a fundamental constitutional right is involved. For reasons previously discussed, however, I reject this contention. "[T]he Second Amendment does not create a fundamental right to

---

[8] For purposes of deciding the pending motion to dismiss, it is not necessary to consider whether there are other members of SAF and NOFA who would have individual standing.

carry a concealed weapon in public." *Hightower v. City of Boston*, 693 F.3d 61, 73 n. 9 (1st Cir. 2012) (quoting *Richards v. County of Yolo*, 821 F.Supp.2d 1169, 1174 (E.D.Cal. 2011)).  Alternatively, the plaintiffs contend aliens are a suspect class.  This alternative contention has merit. "As a general matter, a state law that discriminates on the basis of alienage can be sustained only if it can withstand strict judicial scrutiny." *Bernal v. Fainter*, 467 U.S. 216, 219-20 (1984).

The defendants contend an exception applies. Specifically, they rely on the Supreme Court's pronouncement in *Sugarman* that "our scrutiny [of legislative classifications based on alienage] will not be so demanding where we deal with matters resting firmly within a State's constitutional prerogatives."  413 U.S. at 648. Although the Supreme Court held in *Sugarman* that a New York law excluding non-citizens from civil service could not withstand close scrutiny and was unconstitutional, the defendants assert that the "governmental function" principle recognized by the Court in that decision should apply to public safety laws. They cite *Foley v. Connelie*, 435 U.S. 291 (1978) (New York statute limiting appointment of members of state police force to United States citizens was unconstitutional under rational relationship test); *Cabell v.Chavez-Salido*, 454 U.S. 432 (1985) (requirement that peace officers be citizens was sufficiently tailored to pass lower level of scrutiny  articulated in *Sugarman*); and *Ambach v. Norwick*, 441 U.S. 68 (1979) (citizenship requirement for teaching in public school was only required to bear rational relationship to legitimate state interest). These cases, none of which concern a state's exercise of its police powers, do not support the proposition urged by the defendants.  As stated by the Supreme Court in *Toll v. Moreno*, 458 U.S. 1, 13 n. 17 (1982), these cases merely recognize "that a State, in the course of defining its political community, may, in appropriate circumstances, limit the participation of noncitizens in the States' political and governmental functions." A private citizen who carries a concealed handgun is not engaged in a governmental function.

I conclude that the prohibition against non-citizens obtaining a permit to carry a concealed handgun in Nebraska, as imposed by Neb. Rev. Stat. § 69-2433(10), is

-19-

subject to strict scrutiny review.  I note that the same conclusion was reached by the *Smith* court when considering an as-applied challenge to the South Dakota concealed-carry permit law.  That court stated:

> SDCL 23-7-7.1(8) explicitly discriminates on the basis of alienage because it allows only United States citizens to obtain a temporary permit. Thus, this case does not involve an "equal protection attack" against "facially neutral legislation." *See Washington v. Seattle Sch. Dist. No. 1,* 458 U.S. 457, 484–85, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982) ("Thus, when facially neutral legislation is subjected to equal protection attack, an inquiry into intent is necessary to determine whether the legislation in some sense was designed to accord disparate treatment on the basis of racial considerations."). Stated differently, SDCL 23-7-7.1(8) is not "facially unrelated" to alienage; the language used explicitly categorizes applicants according to citizenship. *See id.* at 485, 102 S.Ct. 3187. And classifications based on alienage are considered "suspect" for purposes of the Equal Protection Clause. *Nyquist v. Mauclet,* 432 U.S. 1, 7, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977) ("The Court has ruled that classifications by a State that are based on alienage are 'inherently suspect and subject to close judicial scrutiny.'" (citations omitted)); *Examining Bd. of Eng'rs, Architects, and Surveyors v. Flores de Otero,* 426 U.S. 572, 601–02, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976) (applying "strict judicial scrutiny"); *Graham v. Richardson,* 403 U.S. 365, 372, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) ("Aliens as a class are a prime example of a 'discrete and insular' minority [.]"). Therefore, because SDCL 23-7-7.1(8) creates a classification based on a suspect class, it must survive intense judicial scrutiny. *See Seattle Sch. Dist. No. 1,* 458 U.S. at 484-85, 102 S.Ct. 3187 ("We have not insisted on a particularized inquiry into motivation in all equal protection cases: 'A racial classification, regardless of purported motivation, is presumptively invalid and can be upheld only upon an extraordinary justification.'" (citation omitted)). *See also Graham,* 403 U.S. at 370, 376, 91 S.Ct. 1848 (applying strict scrutiny to statute that read as follows: "No person shall be entitled to general assistance who does not meet and maintain the following requirements: 1. Is a citizen of the United States, or has resided in the United States a total of fifteen years").

*Smith,* 781 F.Supp.2d at 884 (footnote omitted).

The defendants assert that the Nebraska law is designed "to protect the public from those individuals carrying concealed handguns whose criminal backgrounds cannot be determined by the licensing agency" (filing 14 at 15). They state that "[i]nformation on the [permit] applicant's ... criminal history is furnished through the Nebraska State Patrol and the Federal Bureau of Investigation's National Crime Information Center ('NCIC')" (filing 14 at 13 (citing Neb. Rev. Stat. § 69-2431)),[9] but that "the NCIC does not reveal criminal histories from outside of the United States" (filing 14 at 14 (citing http://www.fbi.gov/about-us/cjis/ncic/ncic_files)).

Even if I were to take judicial notice of the FBI website,[10] the information provided there does not establish that Neb. Rev. Stat. § 69-2433(10) "is a narrowly tailored measure that furthers a compelling governmental interest." *Kohlbek v. City of Omaha*, 447 F.3d 552, 555 (8th Cir. 2006) (applying strict scrutiny to affirmative action plan). Because the defendants have the burden of proof on this issue, *see Johnson v. California*, 543 U.S. 499, 506 (2005), their motion to dismiss the equal protection claim will be denied.

---

[9] "In order to insure an applicant's initial compliance with sections 69-2430 and 69-2433, the applicant for a permit to carry a concealed handgun shall be fingerprinted by the Nebraska State Patrol and a check made of his or her criminal history record information maintained by the Federal Bureau of Investigation through the Nebraska State Patrol. In order to insure continuing compliance with sections 69-2430 and 69-2433 and compliance for renewal pursuant to section 69-2436, a check shall be made of a permit holder's criminal history record information through the National Instant Criminal Background Check System." Neb. Rev. Stat. § 69-2431.

[10] "While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment." *Dittmer Properties, L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (internal quotation marks and citations omitted).

-21-

### *Federal Preemption Claim (Count III)*

Although the defendants' motion to dismiss is directed at the entire complaint, their brief contains no discussion regarding the plaintiffs' federal preemption claim. Under our local rules, "[a] party's failure to brief an issue raised in a motion may be considered a waiver of that issue." NECivR 7.1(a)(1)(A). I will consider the issue waived and deny the defendants' motion to dismiss this claim.

### *Action Against the Attorney General (Counts I, II, and III)*

Finally, the Nebraska Attorney General argues that he should be dismissed as a defendant because he has no duties to administer the Concealed Handgun Permit Act and is not alleged to have caused the plaintiffs' injury. The Nebraska State Patrol is charged with the responsibility for issuing permits and adopting rules and regulations to carry out the Act's provisions. *See* Neb. Rev. Stat. §§ 69-2430, 2446.

As authority for naming the Attorney General as a party to the action, the plaintiffs cite Neb. Rev. Stat. § 84-203, but that statute merely provides that "[t]he Attorney General is authorized to appear for the state and prosecute and defend, in any court or before any officer, board or tribunal, any cause or matter, civil or criminal, in which the state may be a party or interested." Because the Superintendent of the Nebraska State Patrol is named as a defendant in his official capacity, the suit is "the functional equivalent of a suit against the State." *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012), *cert. denied*, 133 S.Ct. 482 (2013). Thus, while the Attorney General is authorized to defend the action, he should not be a defendant. The motion to dismiss all claims against the Attorney General will be granted.

### *Conclusion*

To summarize, the plaintiffs' Second Amendment claim and facial equal protection challenge will be dismissed, but the action will proceed against the

Superintendent of the Nebraska State Patrol on the as-applied equal protection challenge and on the federal preemption claim.  The Nebraska Attorney General will be dismissed as a party.

Accordingly,

IT IS ORDERED that the defendants' motion to dismiss (filing 13) is granted in part and denied in part, as follows:

1.      Count I of the plaintiffs' complaint (Second Amendment claim) is dismissed with prejudice.

2.      Count II of the plaintiffs' complaint (equal protection claim) is dismissed with prejudice to the limited extent that the claim involves a facial challenge Neb. Rev. Stat. § 69-2433(10).

3.      John Bruning, in his official capacity as Attorney General of the State of Nebraska, is dismissed as a party defendant.

4.      In all other respects, the motion is denied.

August 30, 2013.                    BY THE COURT:

                                    s/ Richard G. Kopf
                                    Senior United States District Judge

---

* This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.